# ORIGINAL

RICHARD H. GREENER (ISB No. 1191)
THOMAS G. WALKER (ISB No. 1856)
LaDAWN MARSTERS (ISB No. 5663)
COSHO, HUMPHREY, GREENER & WELSH, P.A.
Attorneys at Law
Carnegie Building
815 West Washington Street
Boise, Idaho 83702
Telephone:     (208)344-7811
Facsimile:     (208)338-3290

Attorneys for Plaintiffs

U.S. COURTS

01 MAY 10  PM 4: 53

REC'D_____FILED_____
CAMERON S. BURKE
CLERK          IDAHO

**FEE PAID**
R# 9131

IN THE UNITED STATES DISTRICT COURT FOR THE  DISTRICT OF IDAHO

CIV 01 - 0208 - N - EJL

|  |  |
|---|---|
| MATTHEW J. DOUGLAS, and GLEN DOUGLAS, on behalf of themselves and all others similarly situated, | Case No. CIV 01_____ |
| Plaintiffs, | CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL AND STATE SECURITIES LAWS AND THE IDAHO CONSUMER PROTECTION ACT |
| v. | |
| PRIMEBUY NETWORK.COM, INC., an Oklahoma corporation; CHARLES H. MICHEL; and CHARLES CULVER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiffs, by their undersigned attorneys, allege, upon information and belief, based upon, *inter alia*, the investigation conducted by and through their attorneys, except as to those allegations which pertain to plaintiffs which are alleged upon knowledge, as follows:

## NATURE OF THE ACTION

1.  This is a class action brought by plaintiffs on behalf of themselves and all other

persons or entities who purchased or otherwise acquired unregistered securities in the form of memberships and/or stock issued by PrimeBuy Network.com, Inc. ("PrimeBuy" or the "Company") from September 24, 1999 to the present, inclusive (the "Class Period"), except as noted below, and who were damaged thereby.  Plaintiffs seek to recover damages caused to the Class by defendants' sale of unregistered securities, and by defendants' misrepresentations and omissions of material fact in connection with the operation, financial condition and prospects of PrimeBuy, and in connection with PrimeBuy securities.

2.  This Class Action involves the sale of at least several million dollars in unregistered securities, through a fraudulent offering perpetrated against thousands of investors in the United States by PrimeBuy, a so-called Internet "shopping mall," and its founders, and affiliated persons and entities.

3.  Since its inception on September 24, 1999, PrimeBuy has solicited investors, through its web site, road shows, and other mechanisms, to purchase memberships, which purportedly provide investors with three distinct ways to earn money:  (1) as a member of "an initial community of 100,000 Individual E-Commerce" business owners and distributors; (2) through payment of multilevel marketing commissions for the recruitment of new members; and (3) through investment opportunities in "founders" and other shares of stock in the Company.

4.  Through its web site and other marketing mechanisms, PrimeBuy is conducting illegal offerings by selling unregistered PrimeBuy memberships and stock.

5.  Specifically, PrimeBuy promises investors the opportunity to participate as "Independent Sales Representatives" in an "E-Mall Community," whereby investors purchase and customize web sites that provide online consumer shopping opportunities and other

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 2**
MG:TWG:LDM:cmb  15917-001  5/10/01  \\COMPAQ2500R\FILES\P\PrimeBuy\Pleadings\Complaint.doc

information to consumers. For each product purchased through the web site, the investor is to receive a commission.

6. Moreover, PrimeBuy offers more expensive memberships, whereby investors pay additional money to become "Managers." As Managers, investors are promised the opportunity to earn weekly commissions by recruiting new members.

7. In addition, defendants represented that investors who "upgrade" from Manager to Regional Manager membership status through the payment of additional money are entitled to an even greater share of commissions.

8. The supposed PrimeBuy commissions, however, were earned almost entirely by recruiting new participants to the program.

9. Thus, throughout the Class Period, defendants offered investments in PrimeBuy by representing to potential investors that this company was a growing Internet marketing opportunity.

10. In fact, defendants were conducting a classic "pyramid" scheme. The so-called PrimeBuy Internet Mall was simply a multilevel marketing scheme for which no meaningful consideration was offered other than compensation for soliciting other members. The so-called shopping malls were meaningless, as they merely constituted an array of shopping "opportunities" already available on the Internet.

11. Defendants also offered and sold shares of unregistered PrimeBuy common stock. At times, to induce investors to purchase the illegal and unregistered stock, defendants misrepresented that the stock was registered in accordance with applicable state and federal securities laws.

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 3**

12. As an inducement to potential investors, defendants misrepresented that the Company would be holding an initial public offering of its stock during September 2000. In order to get in on the ground floor, defendants told investors, they could purchase memberships and receive "gifted" shares of PrimeBuy common stock. In addition, members could purchase "founders" shares of PrimeBuy common stock for $1 per share which, defendants claimed, would be worth many times that amount when the Company went public in September of 2000.

13. In fact, the Company never went public and plaintiffs and members of the Class are left holding worthless shares of unregistered stock in an illegal pyramid scheme.

14. By reason of these activities, the defendants have violated multiple sections of the Securities Act of 1933 (the "Act"), the Securities Exchange Act of 1934 (the "Exchange Act"), and the Idaho Securities and Consumer Protection Acts.

## JURISDICTION AND VENUE

15. This court has jurisdiction over the subject matter of this action pursuant to Section 22(a) of the Act, as amended, 15 U.S.C. § 77(v)((a), § 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

16. This is a securities fraud lawsuit arising under Section 5 of the Act, 15 U.S.C. § 77(e)(a)(2), Exchange Act Sections 10(b) and 20(a), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, and principles of common law.

17. Venue is proper in this District pursuant to Section 22(a) of the Act, Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) and (c). Many of the acts complained of herein, including the issuance and dissemination of securities, occurred in this District. Defendants

maintain places of business in this District.

18. In connection with the acts and conduct complained of, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

19. Plaintiff Matthew J. Douglas is a resident of Hayden Lake, Idaho. As described in his sworn Certification, attached hereto and incorporated by reference, plaintiff purchased unregistered shares of PrimeBuy Network.com, Inc. and was damaged thereby.

20. Plaintiff Glen Douglas is a resident of Post Falls, Idaho. As described in his sworn Certification, attached hereto and incorporated by reference, plaintiff purchased unregistered shares of PrimeBuy Network.com, Inc. and was damaged thereby.

21. Defendant PrimeBuy was incorporated on September 24, 1999, under the laws of the State of Oklahoma. Its principal executive offices are located at 4000 Barranca Parkway, Suite 220, Irvine, California, 92604. Founded by defendants Michel and Culver, PrimeBuy touts itself as "the world's leading direct online consumer shopping company." PrimeBuy does business worldwide, including in the United States and Australia. According to defendants' marketing materials, "[t]he Internet has NO borders and PrimeBuy provides services anywhere in the world."

22. Defendant Charles J. Michel ("Michael") is a co-founder of PrimeBuy and was, at all relevant times, its President.

23. Defendant Charles Culver ("Culver") is a co-founder of PrimeBuy and was, at all relevant times, its Secretary.

24. Throughout this Complaint, defendants Michael and Culver are referred to as the "Individual Defendants."

## CLASS ALLEGATIONS

25. Plaintiffs bring this action as a Class Action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent a Class consisting of all persons who purchased or otherwise acquired unregistered securities in the form of memberships and/or stock issued by PrimeBuy from September 24, 1999 to the present (the "Class" and the "Class Period" respectively). In addition, with respect to liability asserted under the Idaho Securities Act, Idaho Code Sections 30-1401 to −1458, and with respect to liability asserted under the Idaho Consumer Protection Act, Idaho Code Sections 48-601, et seq., plaintiffs bring this action on behalf of a subclass of persons residing in the State of Idaho who purchased or otherwise acquired unregistered securities in the form of memberships and/or stock issued by PrimeBuy during the Class Period (the "Subclass"). Excluded from the Class and Subclass are defendants and their affiliates, subsidiaries, and co-conspirators.

26. The members of the Class and Subclass are so numerous that joinder of all Class and Subclass members is impracticable. Plaintiffs believe that there are at least several thousand members in the proposed Class and Subclass dispersed throughout the State of Idaho and other states as well. For example, PrimeBuy's web page, www.primebuynetwork.com, provides investor testimonials from locations including Roseville, Michigan, San Ramone, California, Panama City, Florida, and Coeur D'Alene, Idaho. It is estimated that Class and Subclass members have been defrauded of at least several million dollars, with individual losses ranging

from approximately $295 to more than $4,500.

27. Plaintiffs' claims are typical of those of the members of the Class and Subclass since plaintiffs and all members of the Class and Subclass sustained damages arising out of defendants' wrongful conduct in violation of federal law, as stated in this Amended Complaint. Plaintiffs' claims are also typical of the claims of the members of the Class and Subclass, in that plaintiffs and the Class and Subclass members invested in unregistered securities in the form of memberships and/or stock issued by PrimeBuy and sustained injury as a result.

28. Plaintiffs will fairly and adequately protect the interests of the Class and Subclass and have retained counsel competent and experienced in class and securities litigation. Plaintiffs do not have interests that are antagonistic to or in conflict with those of the Class and Subclass members plaintiffs seek to represent as Class and Subclass Representatives.

29. A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, because the damages suffered by some individual members of the Class and Subclass may be relatively small, the expense and burden of individual litigation makes it impossible for the members of the Class and Subclass to pursue such individual litigation in order to vindicate their rights. Plaintiffs are not aware of any problem that would prevent the maintenance of this action as a Class Action.

30. The names and addresses of those who purchased unregistered securities in the form of memberships and/or stock issued by PrimeBuy during the Class Period are available. Notice techniques and a form of notice similar to those customarily used in Class Actions arising under the securities laws will provide adequate notice to members of the Class and Subclass.

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 7**
MG:TWG:LDM:cmb   15917-001   5/10/01   \\COMPAQ2500R\FILES\P\PrimeBuy\Pleadings\Complaint.doc

31. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions solely affecting individual members of the Class and Subclass. Among the questions of law and fact common to the Class and Subclass are:

a)      Whether the investments sold by defendants are securities under state and/or federal securities laws;

b)      Whether the defendants sold unregistered securities in violation of state and/or federal securities and other laws;

c)      Whether defendants made material misrepresentations of fact and failed to disclose material facts in connection with the sale of securities in violation of state and/or federal securities and other laws;

d)      Whether the Individual defendants are liable as "control persons" for the acts of PrimeBuy and its agents under state and/or federal securities and other laws;

e)      Whether defendants acted in good faith with regard to sales of memberships and/or stock issued by PrimeBuy;

f)      Whether the members of the Class and Subclass have sustained damages and, if so, the proper measure thereof.

## DEFENDANTS' FRAUDULENT SCHEME

32. During the Class Period, defendants sold unregistered securities in the form of memberships and shares of PrimeBuy common stock, which shares were also referred to as "founders stock" and evidenced by PrimeBuy stock certificates. In connection with the sale of these unregistered securities, defendants made material misrepresentations and omitted to

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 8**

disclose material facts in violation of the law.

33. Defendants, pursuant to a general solicitation (including but not limited to road shows and advertisement over the Internet), sold the PrimeBuy securities to investors or "members," including plaintiffs and the other members of the Class and Subclass.  Potential members were led to believe a profit could be made through their investments in the form of commissions earned as PrimeBuy Independent Sales Representatives, Network Managers, and/or Regional Managers.

34. Although members were obliged to contribute their own efforts in finding prospects and arranging for the prospects' participation in sales conference calls, they were to rely primarily on defendants' selling scheme and the selling efforts of defendants and their agents and employees to recover returns from their investments.  All investment decisions, management services, operations, receipt of additional membership fees, and payment of commissions was to be performed by, or at the direction of, the defendants.  Members earned commissions by convincing other investors to become PrimeBuy members.

35. Purchasers of the PrimeBuy securities retained a passive investment role only.  They relied on PrimeBuy to make all management decisions concerning their investment.  Risk of loss to investors existed throughout the term of the investments.

36. Thus, these investments, which primarily offered the potential member the opportunity of earning commissions on the sale of contracts to others, were investment contracts and thus were securities within the meaning of applicable state and federal securities laws, involving an investment of money in a common enterprise with an expectation of profits to come solely from the efforts of others.

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 9**
MG:TWG:LDM:cmb  15917-001  5/10/01  \\COMPAQ2500R\FILES\P\PrimeBuy\Pleadings\Complaint.doc

37. Moreover, throughout the Class Period, the defendants encouraged investors to purchase PrimeBuy memberships by offering to "gift" them shares of stock in exchange for their membership purchase.  Defendants also offered and sold "founders" shares of PrimeBuy common stock, which, defendants claimed, would be worth several times what investors paid once the Company went public in September 2000.

## SUBSTANTIVE ALLEGATIONS

38. On or about September 24, 1999, PrimeBuy was incorporated in the State of Oklahoma to engage in the Internet services business.  The Individual Defendants are PrimeBuy's founders and officers.

39. Throughout the Class Period, beginning on or about PrimeBuy's incorporation date, defendants repeatedly misrepresented the nature of PrimeBuy, convincing investors that PrimeBuy was a booming Internet marketing company, which provided opportunities to members to earn large sales commissions by operation of individual web sites providing "on line access to 10,000 brand name products and mall tenants including JC Penny, K-Mart, OfficeMax, etc."

40. On February 16, 2000, PrimeBuy announced the expansion of its operations into "New Global Headquarters."  At www.primebuynetwork.com, one of at least two web sites controlled and operated by defendants, PrimeBuy featured photographs of its grand new office complex and the following announcement:

> PrimeBuy Network.com, Inc., Expands Operations into New Global Headquarters
>
> PrimeBuy Network.com the world's leading online consumer shopping

company, today announced it has now moved to global corporate headquarters in Irvine, California. Massive early growth and continued market dominance required the acquisition of facilities to accommodate expanded resources to meet current and future business demands. In the high technology center, the new global headquarters will accommodate Customer Service, R&D and Executive Staff.

41. During the Class Period, according to www.primebuynetwork.com, PrimeBuy's

objective was

> To capitalize on the timing and explosive growth of the Internet "on line shopping" (E-Commerce) by creating an initial community of 100,000 Individual E-Commerce owners and distributors in 24 months who have a vested interest to discount shop in their own Internet . . . grow this group to 250,000 owners (shoppers) in 36 months. With a recognized value of 200 dollars per shopper on an E-commerce mall, this would create a Wall Street value of 50 million dollars for PrimeBuy Network.com.

42. PrimeBuy touted its Internet mall marketing scheme, promising members benefits

including, but not limited to the following:

- "A business opportunity where you get into profits immediately: where you can earn several thousand dollars in the next 2 to 3 weeks."

- "A powerful, fast-paying compensation plan empowering individuals to earn a large immediate income while at the same time laying the foundation for a debt free, secure retirement."

- "Timing: in the next 12 months, PrimeBuy Network.com will create millionaires. . . . If there were a perfect time within our lifetime for creating wealth, now is that time, PrimeBuy Network.com is the Vehicle!  IMMEDIATE INCOME, RETIREMENT INCOME AND STOCK OWNERSHIP!"

43. Defendants assured investors that PrimeBuy membership provided a unique

competitive advantage over other e-commerce investments. According to

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 11**
MG:TWG:LDM:cmb  15917-001  5/10/01  \\COMPAQ2500R\FILES\P\PrimeBuy\Pleadings\Complaint.doc

www.primebuynetwork.com,

> Fortunes are made by positioning a company in front of a major trend with
> a competitive advantage. PrimeBuyNetwork.com's competitive advantage
> is creating an E-Commerce mall community where investors own their
> shopping mall and have a vested interest to buy from their own stores and
> share this discount with over 2 million products with others.

44. The web page also summarized the purported business opportunity being offered by

defendants as follows:

> Product:  "World class" wholesale E-commerce shopping mall and highly
> desirable "community" of 100,000 shoppers and members.

45. Defendants further represented that "PrimeBuy Network's program is based upon

retail sales to the ultimate consumer . . . .The compensation plan is based upon retail sales."

46. To lure investors into their networking web, defendants filled their web site with

grandiose figures on Internet retailing and comments from prominent news and other

personalities regarding the Internet boom, all of which, in reality, were completely unrelated to

PrimeBuy. For example, defendants, on www.primebuynetwork.com, attempted to lend

credibility to their own fraudulent scheme by aligning themselves with the following "Magazine

Cover Stories":

> **FORTUNE, Oct 1998**
> INTERNET OR BUST "Don't get left in the dust. The smartest Companies
> are using the net to create a new way of doing business."
>
> **TIME, Nov. 1998**
> KISS YOUR MALL GOODBUY "Online shopping is faster, cheaper and
> better."

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho
Consumer Protection Act - Page 12**

**BUSINESS WEEK, August,** 1998
VOLATILITY IS HERE TO STAY, "But technology will spur robust growth."

**U.S. NEWS & WORLD REPORT, December, 1998**
SHOPPING ON THE WEB, "The surging E-Commerce business gets a boost from takeover of Netscape."

**FAMILY PC, February, 1999**
"LEAVE THE HASSLES AT THE MALL. . . .Shop online!"

**FORTUNE, August, 1999**
".COMfever, Now B-school grads have caught it."

47. Similarly, defendants attempted to align themselves with more prominent Internet businesses, with statements such as one entitled "Wall Street Reflects Value of Internet," which provided investors with the following statistics, none of which had anything to do with PrimeBuy:

AOL's capitalized value now exceeds General Motors - $64 billion vs. $24 billion.

Yahoo's capitalized value tops CBS's - $37.5 billion vs. $24.4 billion.

Amazon.com's cap value stands at $22 billion bigger than Sears Roebuck & Co.

Priceline.com by the end of their first day trading became larger than R.J.R Reynolds and Delta Airlines

Ebay.com capitalized value is $25 billion, 10% bigger than Anheuser-Busch, 25% bigger than Gap

48. In their marketing materials provided to plaintiff and the other members of the Class and Subclass, defendants even went so far as to quote Bill Gates, who opined ". . . E-commerce isn't a rising tide, it's a tidal wave."

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 13**

49. Defendants also encouraged investors with statistics on e-commerce growth such as the following:

From USA Today, Nov. 27, 1998

| | |
|---|---|
| e-Bay | 1036% increase |
| Inktomi | 657% increase |
| Amazon.com | 598% increase |
| Yahoo. Com | 596% increase |
| Theglobe.com | 346% increase |
| AOL | 308% increase |

By featuring figures such as these, defendants intended to and did mislead investors with promises that PrimeBuy would also experience exponential growth.

50. Defendants failed to provide similar statistics for PrimeBuy or disclose that the figures provided bore absolutely no relationship whatsoever to the PrimeBuy securities defendants offered and sold to unsuspecting investors.

51. Instead, defendants attributed each member's success to the availability of shopper incentives and touted the features available through these internet malls, stating, for example:

> The key ingredient to developing this community of shoppers is by providing incentives to individual mall owners as others shop in their mall (friends, relatives and associates). These incentives include heavily discounted products (factory direct), override commissions paid monthly and state of the art, internet services. The commission over-rides are paid as others shop in their E-commerce . . . and when shopping occurs on the malls they sell to others. The other internet services they will receive include free e-mail, on line auctions daily, net phone services, free chat rooms, auto mall, real estate services and trading services, travel services, educational references, etc.

52. Moreover, defendants heralded the strengths of PrimeBuy and its management team,

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 14**
MG:TWG:LDM:cmb  15917-001  5/10/01  \\COMPAQ2500R\FILES\P\PrimeBuy\Pleadings\Complaint.doc

"led by Charles Michel and Charles Culver" as having "extensive collective experience (20

years) at building network marketing distribution systems."

53. PrimeBuy promised "weekly commissions paid directly to you!" and provided

testimonials from satisfied members, who claimed to have earned enormous commissions in a

short amount of time.  Testimonials included the following:

> "I made $16,000.00 in the first 8 weeks!  This is the easiest, most lucrative
> program I've seen in my 15 plus years in this industry!"
>
> Gloria C., Roseville, MI
>
> "I thank my sponsor, I thank the founders of this program, but most of all I
> thank the Good Lord!  In the last 9 weeks I have made over $24,500.00
> with PrimeBuy!"
>
> Terry H., Panama City, FL
>
> "I'm pretty new to this industry.  I've been in the corporate world for the
> last 16 years, but no more!  In 9 weeks with PrimeBuy Network.com I
> have already made over $21,000.00!"
>
> Gretchen A., San Ramone, CA
>
> "Would you believe a retired Firefighter could make this much money?
> With PrimeBuy, I've already made $19,900 in my first 10 weeks!"
>
> Dale W., Coeur D-Alene, ID.

54. Defendants assured investors that they could earn commissions on different levels,

depending upon the price of the membership purchased.

55. For example, an investor could become an "Independent Sales Representative,"

whereby he or she was supposedly entitled to a low-level commission, as determined by a

complex formula.

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho
Consumer Protection Act - Page 15**
MG:TWG:LDM:cmb   15917-001   5/10/01   \\COMPAQ2500R\FILES\P\PrimeBuy\Pleadings\Complaint.doc

56. For an investment of approximately $295, a person could become a "Manager" and thereby "earn" commissions at a greater level than those earned by Independent Sales Representatives.

57. The top level was a "Regional Manager" position, which could be purchased by a Manager for an additional $495, bringing the total investment to $790.

58. Plaintiff Matthew Douglas paid $790 to defendants to become a PrimeBuy Regional Manager and to receive 200 so-called "gifted" shares of PrimeBuy common stock. He then purchased an additional 1000 shares of PrimeBuy common stock. These investments are set forth in greater detail in Matthew Douglas' attached shareholder certification.

59. Plaintiff Glen Douglas invested $790 to become a PrimeBuy Regional Manager and to receive 200 so-called "gifted" shares of PrimeBuy common stock. He then purchased an additional 4000 shares of PrimeBuy common stock. These investments are set forth in greater detail in Glen Douglas' attached shareholder certification.

60. In reality, however, these so-called commissions were earned almost entirely by recruiting new participants to the program.

61. In fact, in their marketing materials, defendants referred to retail commissions as "bonus volume."

62. And when asked "what do I do to make money *now* with PrimeBuy Network.com," defendants, in their marketing materials, responded:

> Simply invite guests to our extensive *Live Conference Call Presentation*, available 7 days per week. These presentations are done by the leaders of the company and <u>we</u> do the selling for you.

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 16**
MG:TWG:LDM:cmb   15917-001   5/10/01   \\COMPAQ2500R\FILES\P\PrimeBuy\Pleadings\Complaint.doc

63. To encourage investors, defendants provided a number of distributor support tools, including the above-referenced series of conference and training calls. To promote memberships, defendants held several of these conference calls daily, including weekends.

64. Defendants also provided members with prepared telephone scripts, and sample web site, print media, fax and direct mail advertisements. These were all designed to enable investors to recruit additional members as part of defendants' pyramid scheme.

65. PrimeBuy's Information Center also featured support tools. By calling the Information Center's extension 1, the listener accessed a "series of powerful testimonials – people from every walk of life sharing their rewarding experiences with PrimeBuy Network.com. A very powerful tool available for your use"

66. By dialing the PrimeBuy Information Center's extension 2, the listener accessed PrimeBuy's "full conference presentation."

67. The PrimeBuy Information Center's Extension 3 provided listeners with "a 10-minute business opportunity presentation – a shortened version of the full conference presentation . . . ."

68. Finally, extension 4 offered listeners "a detailed explanation of the Pay Plan." That extension also provided access to written scripts and other advertising resources approved by the Company.

69. As described herein, during the Class Period, defendants offered investments in PrimeBuy by representing to potential investors that this company was a growing Internet marketing opportunity that would be going public in September 2000.

70. In reality, however, defendants were conducting a classic "pyramid" scheme. The so-called PrimeBuy Internet Mall was simply a multilevel marketing scheme for which no

meaningful consideration was offered other than compensation for soliciting other members. The so-called shopping malls were meaningless, as they merely constituted an array of shopping "opportunities" already available on the Internet.

71. PrimeBuy was a classic "pyramid" scheme, in which participants attempt to make money solely by recruiting new participants into the program. The hallmark of these schemes is the promise of large returns in a short period of time in exchange for the investor doing nothing other than handing over his or her money.

72. In this case, defendants went to great lengths to make PrimeBuy look like a legitimate multi-level marketing program. Despite their claims that they offered legitimate products and services for sale, defendants simply used the money coming in from new recruits to pay expenses and pay off any earlier investors who demanded payment. Ultimately, however, the promoters are unable to raise enough money from new investors and the pyramid becomes impossible to sustain.

73. Evidence of defendants' efforts to portray PrimeBuy as a legitimate business is found in the State of Oregon, where defendants nearly convinced an Oregon county judge and legal assistant that PrimeBuy provided a viable fundraising opportunity to support drug diversion programs.

74. A National Law Journal article dated November 27, 2000 described an incident in which the Oregon legal assistant attempted to invest court funds in PrimeBuy for fundraising purposes. The article stated that the Oregon Attorney General's office determined that PrimeBuy was an illegal pyramid scheme. Judge Darryl Larson, a Lane County, Oregon, Drug Court judge, was still not entirely convinced, stating that "There are many things on the Internet that we don't

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 18**

know yet if they're legal . . . . Maybe it's cutting edge." The Judge asked the Attorney General

to investigate further and issue an opinion.

75. On December 8, 2000, in a letter to Tali McKay of the Lane County Drug Court,

Drew A. Lianopolous, Assistant Attorney General for the State of Oregon Department of Justice

Civil Enforcement division wrote in part:

> [T]he Primebuynetwork.com program bears several characteristics that are
> typical of an illegal pyramid scheme. For example, the primary method of
> generating money from this operation seems to be through recruitment of
> new mall operators who purchase the tracking software or sales aids.
> While legitimate sales commissions of actual products sold through a mall
> site could, in theory, generate legitimate revenue, in practice we have not
> found that to be the case. We suspect that most if not all profit to be
> realized will come from selling the software package to new "downline"
> mall operators.
>
>          *      *      *
>
> Our experience with many [multilevel marketing] schemes reveals that
> most participants end up losing most of the money they "invest," while a
> select few people at the top reap thousands of dollars collected at the
> expense of those below them.

76. On December 27, 2000, the Associated Press announced that the "Attorney General's

office had said it considers PrimeBuy to be an illegal pyramid scheme because it pays some

commissions based on recruiting additional distributors rather than the sale of products."

77. As part of their scheme, defendants offered and sold various promotional products,

including software and videos, at additional cost to plaintiffs and the other members of the Class

and Subclass.

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho
Consumer Protection Act - Page 19**
MG:TWG:LDM:cmb 15917-001 5/10/01 \\COMPAQ2500R\FILES\P\PrimeBuy\Pleadings\Complaint.doc

78. During the Class Period, defendants also sold illegal, unregistered shares of stock to plaintiffs and the other members of the Class and Subclass.

79. Stock certificates were dated September 28, 1999, although they were not purchased until many months later.

80. Both of the Individual Defendants signed the stock certificates.

81. Aware of registration requirements, defendants also misrepresented that PrimeBuy's stock was or would soon be publicly traded on an open market, with statements such as the following, which appeared on www.primebuynetwork.com:

> The company: *Publicly traded*, driving shareholder value by building community and massive traffic.

(emphasis supplied).

82. During the Class Period, defendants claimed to operate several "stock incentive programs" and misrepresented that they were "gifting" shares of stock and/or options to investors when, in reality, defendants required investors to purchase stock at $1.00 per share.

83. For example, defendants placed the following "Stock Offering to Independent Distributors" on www.primebuynetwork.com:

> Effective February 18th, a new stock incentive program is in effect. Independent Distributors have the option to receive gifted stock for an indefinite period of time. A Manager who has been with the company for 30 days and certifies that he/she has reviewed all the policies, procedures, and training materials received in the Welcome Kit is eligible for 50 shares of stock. This stock is vested for one (1) year, at which time it becomes available to an "Active Distributor." An Active Distributor is one who has done a minimum of $50 per month of Personal Business Volume (PBV) for any six (6) months of a 12-month period.
>
> A Regional Manager who has been with the company for 30 days and

certified that he/she has completed the home study course and read all the policies and procedures is eligible for 200 shares of gifted stock. The stock is vested for one (1) year, at which time it becomes available to an "Active Distributor." An Active Distributor is one who has done a minimum of $50 per month of Personal Business Volume (PBV) for any six (6) months of a 12-month period.

In addition, any Regional Manager who completes two (2) Regional Manager customer groups within a 90 day period of joining qualifies for an additional 200 shares in options that he/she may purchase for $1 a share for up to a year.

84. Similarly, in response to the question, "How long will the current Stock Gifting offering be in place," defendants responded:

It's hard to determine. A block of stock has been set aside so the first few thousand members may be shareholders in the company. With our current rate of growth the gifting program will end sometime in the first quarter of 2000.

85. In reality, however, this stock was not "gifted." Plaintiffs and the other members of the Class and Subclass purchased shares of common stock, also known as "founders stock," for $1 per share, pursuant to defendants' solicitation, and were issued PrimeBuy stock certificates. The so-called "gifted" stock was provided to investors in exchange for their payment of a PrimeBuy membership fee. The higher the membership fee paid, the more "gifted" shares they received.

86. Defendants were fully aware of the registration requirements mandated by state and federal securities laws and aware that PrimeBuy did not comply with any exemptions to registration. Nevertheless, throughout the Class Period, defendants sold stock in flagrant violation of these laws to plaintiffs and the other members of the Class and Subclass.

87. At times, defendants disclosed the fact that the stock certificates were unregistered,

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 21**

but they intentionally misrepresented to plaintiffs and the other members of the Class and

Subclass that the stock was legally issued pursuant to an exemption from registration and/or

omitted to disclose that the stock was not issued pursuant to an exemption from registration.

This allowed the defendants to conceal and perpetrate their fraudulent scheme throughout the

Class Period.

88. At other times, they misrepresented that the shares were indeed registered in

compliance with applicable state and federal laws.

89. Moreover, investors were repeatedly advised that PrimeBuy would be selling stock in

an initial public offering ("IPO") in the near future.  Defendants initially and repeatedly

identified an IPO date of September 2000, yet as of the time of the filing of this complaint, no

such offering has occurred.   In the marketing materials provided by defendants to plaintiffs and

the other members of the Class and Subclass, defendants advised that PrimeBuy would be

"Going public (Wall Street), Fall 2000."  Defendants' web site, www.primebuynetwork.com

continues to tout its success and currently advises investors that the IPO will occur "sometime in

2001":

> The company continues to dedicate tremendous resources to building a
> community of 100,000 Independent Business Owners, and is on track to
> achieving this benchmark within the first 18 months of operation.
> PrimeBuy™ Network.com projects an increase to 250,000 Independent
> Business Owners (shoppers) within 36 months. With a recognized value of
> $200 per member shopper, PrimeBuy™ Network.com's estimated
> valuation will be in excess of $50 million for its shareholders. The
> company anticipates an initial public offering sometime in 2001.

90. In "Executive Summary" materials provided by defendants to plaintiffs and the other

members of the Class and Subclass, defendants represented that "1,000,000 shares of

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho
Consumer Protection Act - Page 22**
MG:TWG:LDM:cmb  15917-001  5/10/01  \\COMPAQ2500R\FILES\P\PrimeBuy\Pleadings\Complaint.doc

PrimeBuyNetwork.com stock will be allocated for the IPO (initial public offering) which will start at $5-$6 per share," yet they nevertheless continued to offer and sell the unregistered PrimeBuy securities.

91. In the offer and sale of PrimeBuy memberships and/or stock to investors, the defendants failed to disclose material facts and misrepresented material facts including, but not limited to:

a) That the PrimeBuy memberships and stock certificates sold by defendants were "securities" within the meaning of section 2(1) of the Act, section 3(a)(10) of the Exchange Act, and Idaho Code section 30-1402(12);

b) That the sale of PrimeBuy memberships and stock constituted the sale of securities that were not registered with appropriate regulatory agencies and were not otherwise exempt from securities registration laws and regulations;

c) That the PrimeBuy memberships and stock were required to be registered under state and federal securities laws;

d) The financial condition of the issuing entity (including financial statements);

e) That PrimeBuy was in fact an illegal pyramid scheme, and its program was not based upon retail sales to the ultimate consumer; and

f) Other material prospectus information that would have been available to investors had the securities been registered.

92. In addition, PrimeBuy misrepresented that "Independent Sales Representatives may return literature in reusable and in re-salable condition at anytime within 30 days of purchase and receive [a] 100 percent refund." Defendants further misrepresented that refunds would be

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 23**
MG:TWG:LDM:cmb  15917-001  5/10/01  \\COMPAQ2500R\FILES\P\PrimeBuy\Pleadings\Complaint.doc

provided "within 30 days of actual receipt of item(s) returned."

93. Even when PrimeBuy literature was returned to defendants within 30 days of purchase and in reusable and re-salable condition, PrimeBuy refused to issue the promised refund.

94. For example, on or about February 22, 2001, plaintiff Matthew Douglas requested a refund of his investment from defendants.

95. On or about March 8, 2001, defendants advised Matthew Douglas that they would process a refund of his investment, provided he returned his PrimeBuy materials and copies of his cancelled checks used to purchase his PrimeBuy securities.

96. On or about March 26, 2001, Matthew Douglas returned his materials, including cancelled checks payable to PrimeBuy, to the Company, but no refund followed.

97. Then, in response to Matthew Douglas' repeated refund requests, defendants, through their employee, on April 17, 2001, refused to refund Matthew Douglas' stock investment, stating:

> As far as your refund, I just received a memo from the accounting
> department stating that none of the stock purchases can be refunded
> because of what you agreed to when you purchased those.

98. Defendants have no intention of refunding Matthew Douglas' membership or stock investments and continue to misrepresent that PrimeBuy will have an initial public offering in 2001, despite their noncompliance with state and federal registration requirements.

99. As recently as April 25, 2001, an e-mail from Mr. Michel was sent to Matthew Douglas stating the following:

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 24**

Matthew,
Our growth continues at a record pace at PrimeBuy. Our mall is now the
worlds largest on line shopping community that is member driven. We
have over 40 million products and 1,200 vendor/partners. Brand names
such as IBM, Apple, Dell, Compaq, Sony, Disney, Mattel, Wal-Mart,
Nordstrom's, Lands End, Eddie Bauer, Etc, etc.(Take at look!!) We are
looking forward to our public offering on Wall St when the timing is right,
_Probably Spring or Fall. We also have tremendous growth
internationally with reps in 25 foreign countries!! We are confident our
IPO will do well because we have brand name $10 mill in sales 1st yr and
we are profitable!
Thanks
Chuck

100.    In response to another refund request by Matthew Douglas, defendants, through

their employee, on April 18, 2001, replied: "tell him investing in a pre-IPO company is a risk he

took."

101.    Yet nowhere was this "risk" disclosed in any written offering materials, as

required by state and federal securities laws.

102.    As of the date of this Complaint, defendants have failed to refund Matthew

Douglas' refund, as initially promised.

103.    The truth began to emerge when, contrary to defendants' aggressive

representations that the IPO would occur during September 2000, as of September 30, 2000, no

initial public offering of PrimeBuy stock had occurred.

104.    Moreover, it became evident on or about April 25, 2001, that defendants'

representations that memberships and stock investments were completely refundable were also

materially false and misleading.

105.    Plaintiffs and members of the Class and Subclass did not know, and by the

exercise of reasonable diligence could not have known, of their claims prior to this date.

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho
Consumer Protection Act - Page 25**

106.    Plaintiffs reasonably relied to their detriment on defendants' purported refund policy.

107.    Defendants are equitably estopped from arguing a statute of limitations defense during the time of pending "refunds." Alternatively, the running of any statute of limitations is tolled during the time of the pending "refunds."

108.    Defendants made or caused to be made misrepresentations and omissions set forth above, disregarding the fact that said misrepresentations were untrue and that they were omitting to state material facts that would have made those facts not misleading. Further, in making these misrepresentations and omissions, defendants knew or recklessly disregarded the fact that plaintiffs and the members of the Class and Subclass would rely on the statements to their detriment. Defendants breached their duties of disclosure to plaintiffs and members of the Class and Subclass by failing to disclose material facts as well as other facts relating to the true state of events as described herein.

109.    At the time of these misrepresentations, omissions, and non-disclosures, plaintiffs and the members of the Class and Subclass were not aware of the non-disclosures or that the statements made by the defendants were either untrue or contained misleading omissions. Plaintiffs and Class and Subclass members reasonably relied on the truth and completeness of the material representations made to them.

110.    The foregoing conduct also constitutes the employment by the defendants of a device and scheme to defraud, as well as acts, practices, and a course of dealing which operate as a fraud.

111.    During the Class Period, the defendants engaged in a plan, scheme, unlawful

## COUNT I
### Violations of Sections 5(a), 5(c), and 12(a)(1) of the Act

113.    Plaintiffs restate and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint, except to the extent that such paragraphs charge defendants with intentional or reckless misconduct.

114.    This Count is brought pursuant to Sections 5(a), 5(c) and 12(a)(1) of the Act against all defendants on behalf of all persons who purchased or otherwise acquired unregistered securities in the form of memberships and/or stock issued by PrimeBuy during the Class Period.

115.    During the Class Period, defendants, directly or indirectly, singly or in concert with others, offered to sell, sold, and delivered after the sale, PrimeBuy unregistered securities and, directly and indirectly, (a) made use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell such securities, through the use of written contracts, offering documents and otherwise, (b) carried and caused to be carried through the mails and in interstate commerce by the means and instruments of transportation such securities for the purpose of sale and for delivery after sale, and (c) made use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

116.    Defendants were sellers, offerors, and/or solicitors of the sales of the unregistered PrimeBuy securities that are the subject of this Complaint.

117.    No registration statement has been filed with the Securities and Exchange Commission or was otherwise in effect during the Class Period with respect to the offer and sale of any securities described herein.

118.   In connection with such transactions, defendants failed to deliver a prospectus consistent with the requirements of Section 5 of the Act, 15 U.S.C. § 77e.

119.   At the time this action was filed, less than three years had elapsed from the time that the securities upon which this Count is brought were sold to the public to the time of the filing of this action.  Less than one year had elapsed from the time when plaintiffs discovered or reasonably could have discovered the facts upon which this Count is based until the time of the filing of this action.

120.   By reason of the foregoing, the defendants violated Section 5(a) and (c) of the Act, 15 U.S.C. §77e(a) and (c), and Section 12(a)(1) of the Act, 15 U.S.C. § 77l(a)(1).

121.   Accordingly, plaintiffs and the other members of the Class have the right to rescind and recover the consideration paid for their PrimeBuy memberships and shares of PrimeBuy common stock, less any income derived thereon and, accordingly, may elect to rescind, tender their PrimeBuy memberships and shares PrimeBuy common stock to defendants, and seek recovery of damages in an amount to be proved at trial.

122.   This Count is not grounded in fraud.

### COUNT II
### Violations of Section 12(a)(2) of the Act

123.   Plaintiffs restate and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint, except to the extent that such paragraphs charge defendants with intentional or reckless misconduct.

124.   This Count is brought pursuant to Section 12(a)(2) of the Act against all defendants on behalf of all persons who purchased or otherwise acquired unregistered securities

in the form of memberships and/or stock issued by PrimeBuy during the Class Period.

125.    During the Class Period, defendants offered and sold unregistered securities by use of the means or instruments of transportation and communication in interstate commerce and of the mails, by means of offering materials and oral communications, which included materially false and misleading statements of fact and omitted to state material facts necessary in order to make the statements of fact, in the light of the circumstances under which they were made, not misleading.

126.    Defendants were sellers, offerors, and/or solicitors of the sales of the unregistered PrimeBuy securities that are the subject of this Complaint.

127.    By reason of the conduct alleged herein, the defendants violated, and/or controlled a person who violated, Section 12(a)(2) of the Act.

128.    Accordingly, plaintiffs and the other members of the Class have the right to rescind and recover the consideration paid for their PrimeBuy memberships and shares of PrimeBuy common stock, less any income derived thereon and, accordingly, may elect to rescind, tender their PrimeBuy memberships and shares PrimeBuy common stock to defendants, and seek recovery of damages in an amount to be proved at trial.

129.    None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the offering materials or sales presentations were true and without omissions of any material facts.  Each of the defendants (except for the Company, which is strictly liable) acted negligently.

130.    Plaintiffs did not know, and in the exercise of reasonable diligence could not have known, of the untruths and/or omissions made by defendants in connection with the offer and

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 30**

sale of the unregistered securities that are the subject of this Complaint.

131.    At the time this action was filed, less than three years had elapsed from the time

that the securities upon which this Count is brought were sold to the public to the time of the

filing of this action.  Less than one year had elapsed from the time when plaintiffs discovered or

reasonably could have discovered the facts upon which this Count is based until the time of the

filing of this action.

132.    By reason of the foregoing, the defendants violated Section 12(a)(2) of the Act,

15 U.S.C. §77l(a)(2), and plaintiffs and Class members have suffered substantial damages as a

result.

133.    This Count is not grounded in fraud.

### COUNT III
### Violations of Section 15 of the Act

134.    Plaintiffs restate and incorporate by reference the allegations set forth in the

preceding paragraphs of this Complaint, except to the extent that such paragraphs charge

defendants with intentional or reckless misconduct.

135.    This Count is brought pursuant to Section 15 of the Act against the Individual

Defendants on behalf of all persons who purchased or otherwise acquired unregistered securities

in the form of memberships and/or stock issued by PrimeBuy during the Class Period.

136.    Each of the Individual Defendants was a control person of PrimeBuy by virtue of

his position(s) as a director and/or as officer of PrimeBuy.  In addition, the Individual

Defendants each had a series of direct and/or indirect business and/or personal relationships with

other directors, officers and/or major shareholders of PrimeBuy.

137.    At the time this action was filed, less than three years had elapsed from the time that the securities upon which this Count is brought were sold to the public to the time of the filing of this action. Less than one year had elapsed from the time when plaintiffs discovered or reasonably could have discovered the facts upon which this Count is based until the time of the filing of this action.

138.    Each of the Individual Defendants was a culpable participant in the violations of Sections 5(a), 5(c), 12(a)(1) and 12(a)(2) of the Act alleged in Counts I and II above, based on their participation in the process which allowed the completion of the sale of unregistered securities to be completed.

139.    Plaintiffs and Class members have suffered substantial damages as a result of the violations alleged herein.

140.    This Count is not grounded in fraud.

## COUNT IV
### Violations of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder

141.    Plaintiffs restate and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

142.    This Count is brought pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, against all defendants on behalf of all persons who purchased or otherwise acquired unregistered securities in the form of memberships and/or stock issued by PrimeBuy during the Class Period.

143.    The defendants, directly or indirectly, singly or in concert with others, in connection with the purchase and sale of securities, by use of the means and instrumentalities of

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 32**

interstate commerce and by use of the mails (a) have employed devices, schemes and artifices to defraud; (b) have made untrue statements of material facts and have omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) have engaged in acts, practices and courses of business which operated as a fraud and deceit upon purchasers, prospective purchasers and other persons.

144.     As a part of and in furtherance of their scheme to defraud, the defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence and oral presentations which contained untrue statements of material facts and misrepresentations of material facts and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth above.

145.     Defendants were sellers, offerors, and/or solicitors of the sales of the unregistered securities that are the subject of this Complaint.

146.     No registration statement has been filed with the Securities and Exchange Commission or was otherwise in effect during the Class Period with respect to the offer and sale of any securities described herein.

147.     The defendants made those misrepresentations and omissions knowingly or with reckless disregard for the truth.

148.     Plaintiffs did not know, and in the exercise of reasonable diligence could not have known, of the untruths and/or omissions made by defendants in connection with the offer and sale of the unregistered securities that are the subject of this Complaint.

149.     At the time this action was filed, less than three years had elapsed from the time

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 33**

that the securities upon which this Count is brought were sold to the public to the time of the

filing of this action.  Less than one year had elapsed from the time when plaintiffs discovered or

reasonably could have discovered the facts upon which this Count is based until the time of the

filing of this action.

150.    By reason of the foregoing, the defendants violated the provisions of

Section 10(b) of the Exchange Act, 15 U.S.C. § 78(b), and Rule 10b-5, 17 C.F.R. § 240.15b-5,

and plaintiffs and Class members have suffered substantial damages as a result.

### COUNT V
### Violations of Section 20(a) of the Exchange Act

151.    Plaintiffs restate and incorporate by reference the allegations set forth in the

preceding paragraphs of this Complaint.

152.    This Count is brought pursuant to Section 20(a) of the Exchange Act against the

Individual Defendants on behalf of all persons who purchased or otherwise acquired unregistered

securities in the form of memberships and/or stock issued by PrimeBuy during the Class Period.

153.    The Individual Defendants, by virtue of their offices and positions and the

specific acts described above were, at the time of the wrongs alleged herein, controlling persons

of PrimeBuy within the meaning of Section 20(a) of the Exchange Act.

154.    The Individual Defendants had the power and influence and exercised the same to

cause PrimeBuy to engage in the illegal conduct and practices complained of herein.

155.    By reason of the conduct alleged in the preceding Count of this Complaint, the

Individual Defendants violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78(t)(a), and are

liable for the aforesaid wrongful conduct and are liable to plaintiff and the other members of the

Class for the substantial damages they suffered in connection with their purchases of PrimeBuy

securities during the Class Period.

## COUNT VI
### Violations of Idaho Securities Act, Idaho Code §§ 30-1416 and 30-1446(1)

156.     Plaintiffs restate and incorporate by reference the allegations set forth in the

preceding paragraphs of this Complaint.

157.     This Count is brought pursuant to the Idaho Securities Act, Idaho Code Sections

30-1416 and 30-1446(1), against all defendants on behalf of the Subclass of all persons who

purchased or otherwise unregistered securities in the form of memberships and/or stock issued

by PrimeBuy in the State of Idaho during the Class Period.

158.     During the Class Period, defendants offered to sell and sold unregistered

PrimeBuy securities within the State of Idaho by means of untrue statements of material facts or

omissions to state material facts necessary in order to make the statements made, in light of the

circumstances in which they were made, not misleading.

159.     During the Class Period, the defendants, directly or indirectly, singly or in concert

with others, in connection with the offer for sale, purchase and sale of securities (a) employed

devices, schemes and artifices to defraud; (b) made untrue statements of material facts and

omitted to state material facts necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading; and (c) engaged in acts, practices

and courses of business which operate as a fraud and deceit upon purchasers, prospective

purchasers and other persons.

160.     As a part of and in furtherance of their scheme to defraud, the defendants, directly

and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence and oral presentations which contained untrue statements of material facts and misrepresentations of material facts and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth above.

161.    Defendants were sellers, offerors, and/or solicitors of the sales of the unregistered securities that are the subject of this Complaint.

162.    No registration statement has been filed with the Securities and Exchange Commission or was otherwise in effect during the Class Period with respect to the offer and sale of any securities described herein, nor were the securities described herein subject to any exemption from registration under the state or federal securities laws.

163.    The defendants made those misrepresentations and omissions knowingly or with reckless disregard for the truth.

164.    Plaintiffs did not know, and in the exercise of reasonable diligence could not have known, of the untruths and/or omissions made by defendants in connection with the offer and sale of the unregistered securities that are the subject of this Complaint.

165.    At the time this action was filed, less than three years had elapsed from the time that the securities upon which this Count is brought were sold to the public to the time of the filing of this action.

166.    By reason of the foregoing, the defendants violated the provisions of Idaho Code Sections 30-1416 and 30-1446(1), and plaintiff and Subclass members have suffered substantial damages as a result.

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 36**

## COUNT VII
### Violations of Idaho Securities Act, Idaho Code §§ 30-1416 and 30-1446(2)

167.     Plaintiffs restate and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

168.     This Count is brought pursuant to the Idaho Securities Act, Idaho Code Sections 30-1416 and 30-1446(2), against the Individual Defendants on behalf of the Subclass of all persons who purchased or otherwise acquired unregistered securities in the form of memberships and/or stock issued by PrimeBuy in the State of Idaho during the Class Period.

169.     The Individual Defendants, by virtue of their offices and positions and the specific acts described above were, at the time of the wrongs alleged herein, persons in control of PrimeBuy within the meaning of Idaho Code Section 30-1446(2).

170.     The Individual Defendants had the power and influence and exercised the same to cause PrimeBuy to engage in the illegal conduct and practices complained of herein.

171.     By reason of the conduct alleged in the preceding Count of this Complaint, the Individual Defendants violated Section 30-1446(2) of the Idaho Code, and are liable for the aforesaid wrongful conduct and are liable to plaintiffs and the other members of the Subclass for the substantial damages they suffered in connection with their purchases of PrimeBuy securities during the Class Period.

172.     The Individual Defendants were sellers, offerors, and/or solicitors of the sales of the unregistered securities that are the subject of this Complaint.

173.     The Individual Defendants participated and/or materially aided in the sale of the unregistered PrimeBuy securities that are the subject of this action, and knew, or in the exercise

of reasonable care could have known, of the existence of the facts by reason of which this liability is alleged to exist.

174.    By reason of the foregoing, the defendants violated the provisions of Idaho Code Sections 30-1416 and 30-1446(2), and plaintiffs and the other members of the Subclass have suffered substantial damages as a result.

175.    By reason of the foregoing, the defendants are jointly and severally liable for the substantial damages sustained by plaintiffs and the other members of the Subclass.

### COUNT VIII
**Violations of Idaho Code § 18-3101 and Idaho Consumer Protection Act,
Idaho Code § 48-601, *et seq.***

176.    Plaintiffs restate and incorporate by reference the allegations set forth in the preceding paragraphs of this Complaint.

177.    This Count is brought pursuant to Idaho Code Section 18-3101 and the Idaho Consumer Protection Act, Idaho Code Sections 48-601, *et seq.* against all defendants on behalf of the Subclass of all persons who purchased or otherwise acquired unregistered securities in the form of memberships and/or stock issued by PrimeBuy in the State of Idaho during the Class Period.

178.    During the Class Period, defendants and/or defendants' agents and/or or employees, promoted, offered, advertised and/or granted participation in a "chain distributor scheme" or "pyramid distributor scheme" as defined by Idaho Code Section 18-3101(2). Specifically, defendants and/or their agents and/or employees promoted, offered, advertised and/or granted participation in a plan or operation where by plaintiff and the other members of the Subclass gave consideration for any person's introduction of other persons into participation

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 38**

their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

     D.     Awarding plaintiffs and the other members of the Subclass punitive damages pursuant to the Idaho Consumer Protection Act, Idaho Code § 48-608;

     E.     Enjoining defendants from all further activities related in any manner to the scheme alleged herein;

     F.     Granting extraordinary equitable and/or injunctive relief as permitted by law, equity and federal and state statutory provisions sued on hereunder, including attaching, impounding, imposing a constructive trust upon or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiffs have an effective remedy; and

     G.     Granting such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated this 10th day of May, 2001.

COSHO, HUMPHREY, GREENER & WELSH, P.A.

By _____
    Richard H. Greener
    Attorneys for Plaintiff Class

Of Counsel:         KELLER ROHRBACK L.L.P.
                  Lynn Lincoln Sarko, WSBA #16569
                  Mark A. Griffin, WSBA #16296
                  Elizabeth A. Leland, WSBA #23433

                  Attorneys for Plaintiff Class

**Class Action Complaint for Violation of Federal and State Securities Laws and The Idaho Consumer Protection Act - Page 40**
MG:TWG:LDM:cmb   15917-001   5/10/01   H:\P\PrimeBuy\Pleadings\Complaint.doc

# PRIMEBUY NETWORK.COM, INC.

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAW

Glen Douglas ("Plaintiff"), duly swears and says, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint against PRIMEBUY NETWORK.COM, INC. and its co-founders, I approve of its contents, and I authorize the complaint to be filed on my behalf.

2. I did not purchase the security that is the subject of this action at the direction of my counsel or in order to participate in this private action.

3. I am willing to serve as a representative plaintiff on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transactions in the securities of PRIMEBUY NETWORK.COM, INC.:

| Shares Purchased | Date of Purchase | Price Per Share |
|---|---|---|
| *200 "gifted" fr membership | 2/23 | $790 ⁰⁰ (membership) |
| * 3500 | 3/13 | $1⁰⁰ |
| * 500 | 3/22 | $1⁰⁰ |

5. I have not sought to serve as a class representative in any other action filed under the United States federal securities laws in the past three (3) years preceding the date on which this certification is signed, except as listed below.

6. I have not and will not accept any payment for serving as a representative plaintiff on behalf of the class beyond my pro rata share of any recovery, or as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _5_ day of _May_, 2001, at _Post Falls_, _Id._
                                                                                    (City, State)

By: _Glen Douglas_
        (Signature)

PRINT NAME:_ Glen Douglas

KELLER ROHRBACK L.L.P.
SUITE 3200
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3052
(206) 623-1900
FAX (206) 623-3384

# PRIMEBUY NETWORK.COM, INC.

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAW

Matthew J. Douglas ("Plaintiff"), duly swears and says, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint against PRIMEBUY NETWORK.COM, INC. and its co-founders, I approve of its contents, and I authorize the complaint to be filed on my behalf.

2. I did not purchase the security that is the subject of this action at the direction of my counsel or in order to participate in this private action.

3. I am willing to serve as a representative plaintiff on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transactions in the securities of PRIMEBUY NETWORK.COM, INC.:

| Shares Purchased | Date of Purchase | Price Per Share |
|---|---|---|
| 1000 | 3/22/00 | $1.00 /share |
| + 200 "gifted" membership | 3/20/00 | $ 790.00 total |

5. I have not sought to serve as a class representative in any other action filed under the United States federal securities laws in the past three (3) years preceding the date on which this certification is signed, except as listed below.

6. I have not and will not accept any payment for serving as a representative plaintiff on behalf of the class beyond my pro rata share of any recovery, or as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 30 day of April, 2001, at Hayden Lake, ID.

*(City, State)*

By: _Matt Douglas_
*(Signature)*

PRINT NAME: Matthew J. Douglas

KELLER ROHRBACK L L P
SUITE 3200
1201 THIRD AVENUE
SEATTLE, WASHINGTON 98101-3052
(206) 623-1900
FAX (206) 623-3384